DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Dung Ha ("Ha"), appeals from the decision of the Medina County Court of Common Pleas. This Court affirms.
 I. {¶ 2} In April of 2006, Medway agents began surveillance on Stoneybrook Lane apt. 104, in Brunswick, Ohio, as well as seven other properties, on suspicion of the cultivation and possession of marijuana. Through the investigation, Medway agents noted a pattern of behavior of the subjects of the surveillance. Agents stated that they observed several people of Asian descent traveling among the eight locations. The eight locations were; Stoneybrook Lane apts. 104, 106, and 107, a Grand Lake apartment, and single family homes located at 4784 Baywood, 3384 Red Clover, 1480 Troon Avenue, and 5138 Autumnwood in Brunswick or Brunswick Hills, Ohio. According to agents, residents of the Stoneybrook Lane apartments owned the Red Clover, Baywood, and Troon properties. For instance, Lai Vu, who was on the lease of *Page 2 
Stoneybrook Lane apt. 104, owned the Red Clover property. Agents determined that the Red Clover and Troon properties were the sites of a large scale marijuana cultivation. They also determined that the Baywood property was in the beginning stage of being set up to grow marijuana in the same fashion as the other two homes. Agents termed these three houses "grow houses." Agents observed suspects going to these three homes throughout the day and sleeping at the apartments. Agents noted the same vehicles coming and going from the homes and apartments and that all the subjects appeared to share their vehicles. They further observed the suspects purchasing several items, including electrical equipment, at Home Depot.
 {¶ 3} On June 15, 2006, a search warrant was executed at all eight properties, including Stoneybrook Lane apt. 104. Lai and Lan Vu were present at apt. 104 along with Appellant, Dung Ha ("Ha"). All three were detained. Agents determined that Ha was from Georgia and that he was not present on any of the surveillance footage from April and May. Despite the fact that he was not specifically seen at the properties, agents discovered evidence at the properties that linked Ha to the conspiracy. Accordingly, on June 23, 2006, Ha was indicted for possession of marijuana, greater than 20,000 grams, along with forfeiture specifications. On August 17, 2006, a supplemental indictment was filed charging Ha with the following crimes: possession of marijuana, in violation of R.C. 2925.11(A)/(C)(3)(f), two counts of conspiracy to commit possession of drugs, in violation of R.C. 2923.01(A)(1)/(2) and R.C. 2925.11(A)/(C)(3)(f), complicity to commit possession of drugs, in violation of R.C. 2923.01(A)(2) and R.C. 2925.11(A)/(C)(3)(f), illegal cultivation of marijuana, in violation of R.C. 2925.04(A)/(C)(5)(f), two counts of conspiracy to commit illegal cultivation of marijuana, R.C. 2923.01(A)(1)/(2) and R.C. 2925.04(A)/(C)(5)(f), and complicity to commit illegal cultivation of marijuana, *Page 3 
R.C. 2923.03(A)(2) and R.C. 2925.04(A)(C)(3)(f). Finally, he was charged with two counts of forfeiture, pursuant to R.C. 2925.42(A)(1).
 {¶ 4} Ha pled not guilty to all of the charges, and on March 26, 2007, the case proceeded to a jury trial. At the close of the State's case, the trial court granted Ha's Crim. R. 29 motion on all but the two counts of conspiracy to commit illegal cultivation of marijuana charges. Ha presented several witnesses in his defense. At the close of all evidence, the jury found Ha guilty on the two remaining charges. On September 7, 2007, Ha was sentenced to three years of incarceration. Ha timely appealed his convictions and sentence. He has raised eleven assignments of error for our review. We have rearranged and combined some assignments of error for ease of review.
 II. ASSIGNMENT OF ERROR III "[HA'S] FIFTH AMENDMENT RIGHTS WERE VIOLATED WHEN THE TRIAL COURT ALLOWED THE STATE TO AMEND THE INDICTMENT AT THE CLOSE OF ITS CASE BY SUBSTITUTING ENTIRELY NEW OVERT ACTS FOR THOSE CONTAINED IN THE INDICTMENT RETURNED BY THE GRAND JURY, AND OVERRULED [HA'S] MOTION FOR MISTRIAL."
 {¶ 5} In his third assignment of error, Ha contends that his Fifth Amendment rights were violated when the trial court allowed the State to amend the indictment at the close of its case by substituting entirely new overt acts for those contained in the indictment returned by the Grand Jury and overruled his motion for a mistrial. We do not agree.
 {¶ 6} Amendment of indictments is governed by Crim. R. 7(D), which provides in part:
 "The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged. If any amendment is made to the substance of the indictment, *Page 4 
information, or complaint, or to cure a variance between the indictment, information, or complaint and the proof, the defendant is entitled to a discharge of the jury on the defendant's motion, if a jury has been impaneled, and to a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made, or that the defendant's rights will be fully protected by proceeding with the trial, or by a postponement thereof to a later day with the same or another jury."
 {¶ 7} Ha contends that by adding specific overt acts to the charges, the State impermissibly changed the identity of the crimes. Specifically, he states that "[w]here the amendment to an indictmentrequires proof of an essential factual element which the original indictment did not, `the amendment of the indictment changed the identity of the crime charged in contravention of Crim. R. 7(D).'" (Emphasis in brief) quoting State v. Vitale (1994), 96 Ohio App.3d 695,701, quoting State v. Woody (1986), 29 Ohio App.3d 364, 365. Ha argues that the factual basis of a substantial overt act is an essential element to the conspiracy charges. We decline to address this argument.
 {¶ 8} During its discussion of the State's motion to amend the indictment, the trial court asked Ha's counsel to explain the basis for his objection to the amendment. Ha's counsel stated he was objecting because the amendment was untimely and should have been done prior to trial. The trial court then specifically asked Ha's counsel "Are you saying there is a change in the nature or the name of the crime charged?" Ha's counsel answered, "No." The trial court stated that it would grant Ha a continuance, but informed him that he did not need to make that decision at that time. The transcript later indicates that Ha opted not to request a continuance, and therefore, none was granted. As Ha, when specifically questioned about the basis of his objection, declined to object on the basis of Crim. R. 7(D) and did not raise any constitutional issues at the time of his objection, we find that he has affirmatively waived these arguments on appeal. State v. Hairston, 9th Dist. No. 05CA008768, 2006-Ohio-4925, at ¶ 9, quoting State v. *Page 5 McKee (2001), 91 Ohio St.3d 292, 299, at fn. 3 (Cook, J., dissenting). Therefore, we may not address them on appeal. Id. Ha's third assignment of error is overruled.
 ASSIGNMENT OF ERROR I "IT WAS ERROR FOR THE COURT TO ALLOW THE JURY TO CONSIDER THE TWO COUNTS OF CONSPIRING TO CULTIVATE MARIJUANA AFTER ACQUITTING [HA] OF THE TWO COUNTS OF CONSPIRING TO POSSESS MARIJUANA; THE SUBSEQUENT CONVICTIONS VIOLATED [HA'S] GUARANTEE AGAINST DOUBLE JEOPARDY AND WERE BARRED BY THE DOCTRINE OF COLLATERAL ESTOPPEL."
 {¶ 9} In his first assignment of error, Ha contends that the trial court erred in allowing the jury to consider two counts of conspiring to cultivate marijuana after acquitting him of two counts of conspiring to possess marijuana. Specifically, he contends that the subsequent convictions violated his guarantee against double jeopardy and were barred by the doctrine of collateral estoppel. We do not agree.
 {¶ 10} At the close of the State's case, the trial court granted Ha's Crim. R. 29 motion with regard to two counts of conspiring to possess marijuana. The trial court did not grant his motion with regard to the two counts of conspiring to cultivate marijuana. Our review of the record reveals that Ha did not raise the issues of double jeopardy or collateral estoppel in the trial court. Rather, after Ha made the motion, the trial court granted it in part, and then had a lengthy conversation on the record with the prosecutor. Ha's defense counsel said nothing. Because Ha did not raise the double jeopardy issue before the trial court, he has forfeited the issue and this court need not address it on appeal absent a showing of plain error. Hairston, supra, at ¶ 9, quoting United States v. Olano (1993), 507 U.S. 725, 733. Ha has neither raised plain error nor has he demonstrated why we should delve into these issues for the first time on appeal. State v. Meyers, 9th Dist. Nos. 23864, 23903, 2008-Ohio-2528, at ¶ 42, citing In reL.A.B., 9th Dist. *Page 6 
No. 23309, 2007-Ohio-1479, at ¶ 19. Accordingly, we decline to address Ha's first assignment of error.
 ASSIGNMENT OF ERROR VIII "THE TRIAL COURT ERRED IN DENYING [HA'S] MOTION TO SUPPRESS THE EVIDENCE AGAINST HIM WHEN THE SEARCH WARRANT WAS OVERBROAD, THE POLICE OFFICERS SEARCHED HIS BACKPACK WITHOUT PROBABLE CAUSE AND ARRESTED HIM WITHOUT A WARRANT OR PROBABLE CAUSE."
 {¶ 11} In his eighth assignment of error, Ha contends that the trial court erred in denying his motion to suppress the evidence against him when the search warrant was overbroad, the police officer searched his backpack without probable cause and arrested him without a warrant or probable cause. We do not agree.
 {¶ 12} An appellate court's review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. State v.Long (1998), 127 Ohio App.3d 328, 332. The trial court acts as the trier of fact during a suppression hearing, and is therefore best equipped to evaluate the credibility of witnesses and resolve questions of fact.State v. Hopfer (1996), 112 Ohio App.3d 521, 548. Accordingly, this Court accepts the trial court's findings of fact so long as they are supported by competent, credible evidence. State v. Guysinger (1993),86 Ohio App.3d 592, 594. "The trial court's legal conclusions, however, are afforded no deference, but are reviewed de novo." State v. Russell
(1998), 127 Ohio App.3d 414, 416.
 {¶ 13} Initially, we note that at the hearing on the motion to suppress, Ha's counsel was specifically asked whether he was claiming that the search warrant was overbroad. Ha's counsel stated that he was not claiming that the search warrant was overbroad and that there were "two issues of the probable cause. One is whether or not there is probable cause to search Apartment 104. The second, whether or not there is probable cause for [Ha's] arrest." The trial court then *Page 7 
questioned Ha's counsel, "[o]ther than those two issues, you are not challenging anything about the warrant?" Ha's counsel answered, "No."[1] As such, we find that Ha has waived any argument that the search warrant was overbroad, and we cannot address it for the first time on appeal. Further, we note that the State's brief in response to whether probable cause extends to support the search warrant does not address the issues raised in Ha's brief. Rather, the State points to various portions of the trial transcript to support its argument that the trial court properly granted the motion to suppress. The testimony presented at trial has absolutely no relevance to the trial court's decision not to suppress evidence. To the extent the State regarded this evidence as relevant to the suppression issue, it should have elicited it at the suppression hearing.
 {¶ 14} The trial court issued two journal entries with regard to Ha's motion to suppress. Each journal entry discusses a different issue. The first issue was whether the search warrant that was issued for the premises located at 1747 Stoneybrook Lane, apt. 104 in Brunswick, Ohio, was sufficient to establish probable cause for a search of all persons found in that location. This analysis extended to Ha's backpack. The trial court determined that the affidavit was sufficient to establish probable cause for the issuance of a search warrant at Apt. 104.
 {¶ 15} The next issue was whether Ha's detention by police officers and subsequent transfer to the Brunswick Police Department constituted an unconstitutional warrantless arrest. The trial court determined that "it was reasonable for the police officers to take Mr. Ha into custody while the searches were being conducted and to hold him until more information was *Page 8 
obtained." Therefore, the trial court determined that the nature of his detention was not an arrest, but rather was in the nature of an investigatory detention.
 {¶ 16} As the trial court's decision that the nature of Ha's detention was not an arrest is a question of law, we review this conclusion de novo. Russell, 127 Ohio App.3d at 416. We first note that the trial court's statement that Ha was taken into police custody while the searches were being conducted and until more information was obtained is supported by competent, credible evidence. Officer James Walser of the Brunswick Police Department stated that, in the interest of officer safety, officers secure people when entering an apartment to execute a search warrant. He stated that it was "standard and routine procedure everytime you enter an occupied structure with a search warrant[.]" Officer Charles DeFelice, director of Medway, testified that due to the number of suspects and the language barrier, the suspects were held at the police station until he could bring in an interpreter. On cross examination, he explained that prior to executing the search warrants, he knew that there would be suspects involved who did not speak English. He further explained that he did not have enough interpreters to take to each individual search.
 {¶ 17} With regard to his detention, Ha contends that he was under arrest when officers entered the apartment, drew their weapons, ordered the occupants to the ground, handcuffed him, read him his Miranda rights, and transported him to the police station via police cruiser. He argues that the officers did not have probable cause to arrest him at the apartment. The trial court, however, found that the nature of his detention was reasonable to permit officers to conduct an investigation.
 {¶ 18} Pursuant to Terry v. Ohio (1968), 392 U.S. 1, an "investigatory detention is limited in duration and purpose and can only last as long as it takes a police officer to confirm or to dispel his suspicions.Terry, supra. A person is seized under this category when, in view of *Page 9 
all the circumstances surrounding the incident, by means of physical force or show of authority a reasonable person would have believed that he was not free to leave or is compelled to respond to questions.***"State v. Taylor (1995), 106 Ohio App.3d 741, 747-748.
 {¶ 19} "A `complete restriction' of liberty that is not excessive does not convert an investigatory detention into an arrest." In reParks, 10th Dist. No. 04AP-355, 2004-Ohio-6449, at ¶ 11, quotingUnited States v. Bautista (C.A.9, 1982), 684 F.2d 1286, 1289. We review whether an investigative detention exceeded its permissible scope and rose to the level of an arrest on a case-by-case basis. Parks, supra, at ¶ 10, citing United States v. Vite-Espinoza (C.A.6, 2003), 342 F.3d 462,472.
 {¶ 20} We first note that simply because Ha was handcuffed and read his Miranda rights does not necessarily mean that the detention became an arrest. See State v. Mays (1995), 104 Ohio App.3d 241; State v.Broomfield (Sept. 13, 1996), 2d Dist. No. 95-CA-0103. We conclude that in this unique circumstance, the detention was not unreasonable. The officers understood that the suspects did not speak English. In order to investigate the situation properly, officers needed a way to communicate effectively with Ha. As the testimony revealed, it was not possible for investigating officers to have an interpreter accompany them to search each property. Therefore, a reasonable method of communication was to transport the individuals to a central location to allow them to communicate via interpreter. Accordingly, the motion to suppress on this issue was properly denied.
 {¶ 21} Next, we turn to Ha's argument that once officers discovered that a backpack lying on the living room floor belonged to him, officers could not search the backpack absent his consent. The trial court determined that the search warrant sufficiently established probable cause to search all persons found in the apartment. Initially, we note that Ha does not cite to any *Page 10 
case law to support his argument on this point. Rather, he attempts to distinguish the case upon which the trial court's decision relied.
 {¶ 22} The trial court cites to the syllabus of State v. Kinney
(1998), 83 Ohio St.3d 85, for the proposition that "[a] search warrant authorizing the search of `all persons' on a particular premises does not violate the Fourth Amendment requirement of particularity if the supporting affidavit shows probable cause that every individual on the subject premises will be in possession of, at the time of the search, evidence of the kind sought in the warrant." Kinney, at syllabus.Kinney further states that the court shall determine the reasonableness of a search warrant containing an "all persons" provision by considering "the necessity for this type of search, that is, the nature and importance of the crime suspected, the purpose of the search and the difficulty of a more specific description of the persons to be searched." Id. at 95, citing People v. Nieves (1975), 36 N.Y.2d 396,404-405.
 {¶ 23} He argues that the Kinney Court determined that "`there was an overwhelming probability that anyone present possessed crack/cocaine or other contraband[,]'" because the warrant in Kinney was issued for the search of a "crack house." Ha's appellate brief, quotingKinney, supra, at 90. He states that the facts are completely different in his case and therefore Kinney does not apply. However, the affidavit in the instant case indicates that there was reason to believe that there was, among other things, marijuana or any other controlled substance, or contraband, drug devices, instruments or paraphernalia, "on, and in the residence, and the person of anyone located therein or on the curtilage of [Stoneybrook Lane apt. 104]".
 {¶ 24} Even if we were to agree with Ha that the instant facts are distinguishable from Kinney, we do not agree that the Kinney syllabus is limited to cases involving crack houses. Accordingly, the trial court was correct to apply the statements of law from Kinney to the similar *Page 11 
issues presented in this case. Ha does not point to any other case citation nor make any argument other than his conclusory statement that "under the facts presented, the general search warrant authorizing the search of all persons on the premise was overbroad and a violation of Mr. Ha's fourth amendment rights." An appellant has the burden of affirmatively demonstrating error on appeal. Angle v. W. Res. Mut. Ins.Co. (Sept. 16, 1998), 9th Dist. No. 2729-M, at *1; Frecska v.Frecska (Oct. 1, 1997), 9th Dist. No. 96CA0086, at *2. As such, an appellant must provide citations to authorities supporting his or her brief as required by App. R. 16(A)(7) and Loc. R. 7(A)(7). Otherwise, an appellate court may disregard the assignment of error. See App. R. 12(A)(2) and App. R. 16(A)(7). Moreover, "[i]f an argument exists that can support this [alleged] error, it is not this court's duty to root it out." Cardone v. Cardone (May 6, 1998), 9th Dist. Nos. 18349 and 18673, at *8. Accordingly, we disregard this portion of the assignment of error. See Id., citing App. R. 12(A)(2) and 16(A)(7).
 {¶ 25} Ha's eighth assignment of error is overruled.
 ASSIGNMENT OF ERROR II "THERE WAS INSUFFICIENT EVIDENCE PRODUCED AT TRIAL TO ESTABLISH THAT [HA] ENTERED INTO THE CONSPIRACY OR COMMITTED A SUBSTANTIAL, OVERT ACT IN FURTHERANCE OF THE CONSPIRACY."
 {¶ 26} In his second assignment of error, Ha contends that there was insufficient evidence produced at trial to establish that he entered into the conspiracy or committed a substantial, overt act in furtherance of the conspiracy. We do not agree.
 {¶ 27} When considering a challenge to the sufficiency of the evidence, the court must determine whether the prosecution has met its burden of production, while a manifest weight challenge requires the court to examine whether the prosecution has met its burden of persuasion. State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). To *Page 12 
determine whether the evidence in a criminal case was sufficient to sustain a conviction, an appellate court must view that evidence in a light most favorable to the prosecution:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of crime proven beyond a reasonable doubt." State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 28} In the instant case, Ha was convicted of two counts of conspiracy to cultivate marijuana, in violation of R.C. 2923.01(A)(1) and R.C. 2923.01(A)(2). Pursuant to R.C. 2923.01,
 "(A) No person, with purpose to commit or to promote or facilitate the commission of *** a felony drug trafficking, manufacturing, processing, or possession offense, theft of drugs, or illegal processing of drug documents, *** shall do either of the following:
 "(1) With another person or persons, plan or aid in planning the commission of any of the specified offenses;
 "(2) Agree with another person or persons that one or more of them will engage in conduct that facilitates the commission of any of the specified offenses."
 {¶ 29} R.C. 2923.01(B) provides that
 "[n]o person shall be convicted of conspiracy unless a substantial overt act in furtherance of the conspiracy is alleged and proved to have been done by the accused or a person with whom the accused conspired, subsequent to the accused's entrance into the conspiracy. For purposes of this section, an overt act is substantial when it is of a character that manifests a purpose on the part of the actor that the object of the conspiracy should be completed."
 {¶ 30} Specifically, Ha contends that there was "no evidence whatsoever that [he] entered into an agreement or plan regarding the cultivation of marijuana. Indeed, there was no evidence that [Ha] knew or had any reason to know about the marijuana cultivation operation." *Page 13 
Finally, he argues that there was insufficient evidence that he committed any substantial, overt act in furtherance of the conspiracy. We do not agree.
 {¶ 31} Initially we note that Ha points to his own testimony to show that he "provided ample evidence of his whereabouts in his own defense[.]" However, as a sufficiency argument is focused on the evidence presented by the State, Ha's testimony on his own behalf is not relevant to this issue. Ha also attempts to persuade this Court with conversations the trial court had with counsel regarding co-defendants that wished to testify on his behalf that occurred outside the hearing of the jury. A conversation between counsel that may have occurred on the record is not evidence. Again, as our focus is on whether, after viewing the evidence in a light most favorable to the State, a reasonable fact-finder could have found that Ha entered the conspiracy and committed a substantial, overt act in furtherance of the conspiracy, any conversation outside the hearing of the jury is irrelevant.
 {¶ 32} When the disputed issue is the culpable mental state, such as knowledge, the trial court must often rely on circumstantial evidence because direct evidence will rarely be available. State v. Lott (1990),51 Ohio St.3d 160, 168. Accordingly, the State may rely on circumstantial evidence to prove an essential element of an offense, as "[circumstantial evidence and direct evidence inherently possess the same probative value[.]" State v. Jenks (1991), 61 Ohio St.3d 259, paragraph one of the syllabus.
 {¶ 33} Ha admits that the State presented a tremendous amount of evidence that established the existence of a highly sophisticated marijuana cultivation operation. We find that the State presented sufficient evidence showing that Ha committed several substantial, overt acts in furtherance of this conspiracy, through which the jury could infer his knowledge of, and participation in, the conspiracy. *Page 14 
 {¶ 34} With regard to the substantial, overt acts, the State presented the testimony of Agent Michael Polen, an intelligence specialist for the Medway Drug Enforcement Agency. He testified that he was the evidence custodian on June 15, 2006. He testified to several items located during the search of the properties that led him to believe that Ha was involved in the conspiracy to cultivate marijuana. He noted that while searching one of the grow houses, agents located a business card for Allentown Indoor Garden Supplies out of Pennsylvania. The name "Dung" was written on the back of this card. He noted that many of the receipts for items collected from the searches, believed to be used in the cultivation of the marijuana, were from this store.
 {¶ 35} Next, Polen testified that agents located a mortgage term packet for property located at 4242 Reserve Way in Avon, Ohio. The mortgage packet was sent to Lai Vu at the Red Clover address. A card in the packet had two phone numbers on the back. Polen testified that one number was Ha's cell phone number and the other number was to his Georgia home. To this end, Elaine Bean, a real estate agent in North Ridgeville, Ohio, testified that she wrote a purchase agreement for Lai Vu for the property in Avon, Ohio. She stated that four people, including Lai Vu, came to look at the property and that only one woman, Julie, spoke with her. According to Bean, Lai Vu would speak to Julie and Julie would then speak to her. After an agreement on the home had been signed, Bean was called and informed that Lai Vu could not go through with the transaction. Bean testified that she had another meeting with Lai Vu and the three others, including Julie, with regard to terminating the agreement. Bean testified that at this meeting, Julie, through conversations with the other three, asked her "[t]o keep the property off the market because somebody would be coming from out of state to purchase it." She confirmed that although she could not remember at that time, she had at some point informed the prosecutor *Page 15 
that Julie told her the intended purchaser was an out-of-state relative. The jury could infer that by finding Ha's phone numbers with the real estate papers, Ha was the intended out-of-state purchaser.
 {¶ 36} Polen further testified that a photocopy of Ha's license, which had his social security number written on it, was found in the bedroom of apt. 104. He testified that this paper was similar to paperwork found of other new arrivals to the conspiracy. Most notably, he testified that agents located a photocopy of Tuan Nguyen's license in Stoneybrook Lane apt. 106. According to Polen, Tuan Nguyen was found at the Autumnwood property and had arrived from Canada two weeks prior to the search. Polen stated that through his investigation, he discovered that Tuan Nguyen worked at the Baywood grow house. Polen stated that Tuan Nguyen purchased supplies that officers found at the Baywood grow house. Therefore, the jury could infer from the similarities in documentation that Ha was a new arrival to the conspiracy.
 {¶ 37} Polen also testified to Ha's requests for leave from his place of employment in Georgia. According to Polen, Ha requested leave on April 11, 2006 for the periods of May 24, 2006 to June 5, 2006 and from June 6, 2006 to June 21, 2006. The second period of time was for unpaid leave. Polen stated that on May 15, 2006, Ha executed a quitclaim deed to his wife, Thuy Than Nguyen, for their home in Georgia.
 {¶ 38} Kevin Scullin, a police officer for the city of Brunswick who assisted in the June 15, 2006 search of Autumnwood, testified that he found a phone number notebook that contained the names "Dung" and Lai Vu. A social security number was written underneath Lai Vu and a phone number was written after the name Dung.
 {¶ 39} Samo Mernick, a deputy sheriff at Medina County Sheriffs office testified that he assisted Medway in the June 15, 2006 search of Stoneybrook Lane apt. 104. In the apartment, *Page 16 
Mernick testified that he located a backpack, which he ascertained belonged to Ha. The backpack contained, among other things, Ha's ID and a checkbook with a Georgia address on it. With regard to the checkbook, Fran Jackson, the custodian of records for Wachovia Bank, testified that the account was opened on May 4, 2006 with $8,000. The origin of $7,000 of the $8,000 was from the joint account of Dung Ha and his wife, Thuy T. Nguyen. Jackson testified that minor purchases were made between May 15 and 17, but that there was no activity on the account through June 16. Jackson testified that the total in the account on May 24, 2006 was $7,951.29 and that Dung Ha was the only signature on the account. Jackson testified that there was no writing in the checkbook and it appeared to be a fresh pack of checks.
 {¶ 40} Mernick later testified that he found driving directions fromYahoo.com from Ha's home in Georgia to the Stoneybrook Lane apartments in Brunswick, Ohio. The directions were printed on May 6, 2006. Finally, Mernick testified to a few receipts located in Ha's backpack. He testified that the receipts were from Georgia and that one was from a Home Depot. He stated that the receipt was for switch pliers, ground cover, and top soil. Mernick testified to a receipt from Fry's Electronics for a 12 ft. household extension, a white triplet outlet and something compatible with a camcorder. To give context to the Home Depot receipts, located in Ha's backpack and throughout the properties, Polen testified that ordinary, everyday, household items were used to cultivate the marijuana, including extension cords.
 {¶ 41} Together from these facts, a reasonable juror could find that Ha knew of the conspiracy and committed several substantial, overt acts in furtherance of the conspiracy. It is clear from the testimony that a reasonable juror could find that in late April/early May, Ha requested unpaid leave from work, conveyed his house to his wife by quitclaim deed, opened an individual bank account with $8,000 transferred from his joint account with his wife, and printed *Page 17 
driving directions to the Stoneybrook Lane apartments in Brunswick, Ohio. Further, investigators found several items throughout their search of the eight properties that a reasonable juror could infer tied Ha to the conspiracy. These facts included, finding the name "Dung" in an address book at the Autumnwood property, finding his phone numbers within real estate documents, and finding the name "Dung" in a grow house on the back of a garden center business card. Accordingly, we find that the State presented sufficient evidence to establish that Ha entered into the conspiracy and committed a substantial, overt act in furtherance of the conspiracy.
 {¶ 42} Ha's second assignment of error is overruled.
 ASSIGNMENT OF ERROR XI "THE JURY'S DECISION FINDING [HA] GUILTY OF THE CHARGES WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 43} In his eleventh assignment of error, Ha contends that the jury's decision finding him guilty of the charges was against the manifest weight of the evidence. We do not agree.
 {¶ 44} A determination of whether a conviction is against the manifest weight of the evidence does not permit this Court to view the evidence in the light most favorable to the State to determine whether the State has met its burden of persuasion. State v. Love, 9th Dist. No. 21654,2004-Ohio-1422, at ¶ 11. Rather,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 45} Specifically, Ha contends that the jury's verdict was against the manifest weight of the evidence *Page 18 
 "when there was no evidence at trial indicating that Mr. Ha 1) knew or had any reason to know about marijuana cultivation operation; 2) knew any of the participants in the marijuana cultivation operation beside Mr. and Mrs. Vu; 3) would be willing to assist in the scheme to cultivate marijuana; 4) actually did any act to help the conspiracy achieve its objectives."
 {¶ 46} The argument that there was no evidence presented on these issues is more akin to a sufficiency argument. As we determined in our resolution of his second assignment of error, the record reveals evidence showing that Ha knew of the marijuana cultivation and that he committed substantial, overt acts in furtherance of the conspiracy, thus leading to the logical conclusion that Ha showed a willingness to assist in the scheme to cultivate marijuana. While not specifically addressed above, it is not clear from Ha's argument how any alleged failure of the evidence to show that Ha knew any participants of the marijuana cultivation other than Mr. and Mrs. Vu has any bearing on either the sufficiency or weight of the evidence against him. That said, evidence did exist to indicate that Ha had contact with other participants in the conspiracy, i.e., his name found in an address book at the Autumnwood property, his name on the back of a garden center business card at a grow house and his name and phone numbers located among real estate documents. Ha does not contest the credibility or weight of the evidence to which we have pointed. Rather, he simply contends that the evidence does not exist.
 {¶ 47} Ha points to several pieces of evidence, or lack thereof, to support his argument that his convictions were against the manifest weight of the evidence. He points to the fact that no witness testified that he was observed during any of the surveillance in this case and that the co-defendant who testified, Tuan Do, was able to identify all the previously identified co-defendants except Ha. To this end, we point out that simply because Tuan Do was able to identify other co-defendants from photos, it does not necessarily follow that no one else was involved in the cultivation of marijuana. Rather, Tuan Do testified that he had never been to Lai *Page 19 
Vu's home and that he had moved to the area in May of 2006 to work watering the marijuana plants. Ha places great weight on Tuan Do's statement that he did not meet Ha until after they had been arrested. However, the jury was entitled to find that simply because Tuan Do did not know Ha did not preclude Ha's involvement in the conspiracy. Rather, the jury was able to believe the testimony of the agents showing that Ha's name and personal information was found at several locations and that this indicated that he was involved in the conspiracy.
 {¶ 48} Finally, Ha points to what he terms "the great amount of unfairly prejudicial misconduct by the prosecutor[.]" He cites to the prosecutor's opening and closing arguments to support his argument that the jury clearly lost its way when it convicted him of the conspiracy. We note that the trial court properly instructed the jury that statements made during opening and closing arguments were not evidence.State v. Frazier (1995), 73 Ohio St.3d 323. In the absence of evidence to the contrary, we presume that the jury followed the trial court's instructions and only considered the evidence properly before it. SeeState v. Manns, 169 Ohio App.3d 687, 2006-Ohio-5802. Accordingly, these statements are not a proper basis for an argument that Ha's convictions were against the manifest weight of the evidence.
 {¶ 49} We have reviewed the entire record and, as we must, have weighed the evidence and all reasonable inferences and considered the credibility of the witnesses. Upon review, we cannot find that the jury clearly lost its way when it convicted Ha of the conspiracy charges. Accordingly, Ha's eleventh assignment of error is overruled.
 ASSIGNMENT OF ERROR V "[HA] WAS UNFAIRLY PREJUDICED BY THE INTRODUCTION OF INADMISSIBLE HEARSAY IN VIOLATION OF OHIO EVIDENCE RULES AND HIS RIGHT TO CONFRONT THE WITNESSES AGAINST HIM." *Page 20 
 {¶ 50} In his fifth assignment of error, Ha contends that he was unfairly prejudiced by the introduction of inadmissible hearsay in violation of the Ohio Rules of Evidence and his right to confront the witness against him. We do not agree.
 {¶ 51} This Court reviews a trial court's ruling on the admissibility of evidence for an abuse of discretion. State v. Roberts, 9th Dist. No. 21532, 2004-Ohio-962, at ¶ 14. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. Specifically, Ha takes issue with the testimony of Elaine Bean and her testimony that Julie asked her to keep the home off the market because they had someone from out of state coming to purchase it. We conclude this to be a valid statement of a co-conspirator and it is therefore admissible.
 {¶ 52} Evid. R. 801(D)(2)(e) provides that an out of court statement is not hearsay and is admissible if it is offered against the party and is "a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy." Such a statement is "not admissible pursuant to Evid. R. 801(D)(2)(e) until the proponent of the statement has made a prima facie showing of the existence of the conspiracy by independent proof." State v.Carter (1995), 72 Ohio St.3d 545, paragraph three of the syllabus.
 {¶ 53} In our resolution of Ha's second assignment of error, we determined that the State presented sufficient evidence that Ha was involved in the conspiracy at issue. Ha does not contest that the evidence at trial clearly showed that Lai Vu was involved in the conspiracy at issue. Therefore, Ha and Lai Vu were co-conspirators. Instead, Ha contends that Bean could not testify as to whether Julie was making the request to keep the property off the market or if Lai Vu was making the request. However, our review of the record reveals that Bean testified that *Page 21 
Julie would speak to Lai Vu and then Julie would speak with her. She indicated that the other three, including Lai Vu, were not speaking English. Therefore, the evidence indicates that these statements were made by Lai Vu through Julie. Finally, we find that these statements were made in furtherance of the conspiracy. As we noted above, agents found evidence that tied Ha to this real estate transaction. Accordingly, the trial court did not abuse its discretion by admitting this evidence as a statement of a co-conspirator and by finding that it was relevant.
 {¶ 54} Next, Ha contends that this statement regarding the purchase of real estate violated his right to confrontation because he could not challenge the declarant of this statement. We review this portion of his argument de novo. State v. Hardison, 9th Dist. No. 23050, 2007-Ohio-366, at ¶ 15. In Crawford v. Washington (2004), 541 U.S. 36, the United States Supreme Court held that the Confrontation Clause bars the admission of "testimonial hearsay" unless the declarant is unavailable and the accused has had a prior opportunity to cross-examine him. Id. at 68-69. The Crawford court drew a distinction between testimonial and non-testimonial hearsay and limited its holding to "testimonial" hearsay. See Id. at 68. Thus, unless the statement of Lai Vu, as translated by Julie, was "testimonial," Crawford does not govern its admissibility.
 {¶ 55} Although the Crawford Court declined to "spell out a comprehensive definition of `testimonial,'" it provided examples of those statements at the core of the definition, including prior testimony at a preliminary hearing or other court proceeding, as well as confessions and responses made during police interrogations. See Id. at 51-52, 68.
 {¶ 56} Under this analysis, Lai Vu's statement, as translated by Julie, was not a testimonial statement. It was not prior testimony nor was it a confession or response made to the police during interrogations. "Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law — as *Page 22 
does [Ohio v. Roberts (1980), 448 U.S. 56], and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether." Crawford, 541 U.S. at 68. Accordingly, if a statement is non-testimonial and an exception to the hearsay rules applies, the statement does not violate the Confrontation Clause. We determine that Lai Vu's statement was non-testimonial and, as we explained above, that Lai Vu's statement was a statement of a co-conspirator.
 {¶ 57} As we have determined that Lai Vu's statement through Julie was admissible pursuant Evid. R. 801(D)(2)(e) and that it was not a testimonial statement, we conclude that it does not violate Ha's right to confrontation.
 {¶ 58} Accordingly, Ha's fifth assignment of error is overruled.
 ASSIGNMENT OF ERROR IV "THE TRIAL COURT COMMITTED PLAIN, REVERSIBLE ERROR WHEN IT FAILED TO INSTRUCT THE JURY ON THE ESSENTIAL ELEMENTS OF THE OFFENSE OF MARIJUANA CULTIVATION."
 {¶ 59} In his fourth assignment of error, Ha contends that the trial court committed plain error when it failed to instruct the jury on the essential elements of the offense of marijuana cultivation. We decline to address this issue.
 {¶ 60} Our review of the record indicates that the trial court engaged in discussion with counsel regarding jury instructions. Although Ha's counsel raised objections to the trial court's proposed jury instructions, he did not raise this specific issue. Further, at the end of the discussion, the trial court decided that "given also the fact that each of the parties has brought up objections to the jury charge, I am going to excuse this jury to one o'clock on Monday afternoon[.]" The trial court then ordered the parties to work on redrafting the instructions together and provide the trial court with the new draft. No discussion took place on the record *Page 23 
after the new draft was submitted. Accordingly, we conclude that Ha did not merely forfeit this objection to the jury instructions, rather the objection has been waived. The waiver of an objection precludes this Court from reviewing it on appeal. Hairston, supra, at ¶ 9. Accordingly, we decline to address Ha's fourth assignment of error.
 ASSIGNMENT OF ERROR VI "THE JURY VERDICT MUST BE REVERSED, AS THE VERDICT FORMS STATE THAT [HA] WAS FOUND `GUILTY OF THE OFFENSE OF ILLEGAL CULTIVATION OF MARIJUANA,' INSTEAD OF CONSPIRACY TO COMMIT THE ILLEGAL CULTIVATION OF MARIJUANA."
 ASSIGNMENT OF ERROR VII "[HA] WAS DENIED HIS DUE PROCESS RIGHT TO A UNANIMOUS VERDICT WHEN THE AMENDED INDICTMENT AND JURY CHARGE CONTAINED EIGHT ALTERNATIVE SUBSTANTIAL OVERT ACTS AND NO REQUIREMENT THAT THE JURORS ELECT WHICH WAS PROVEN."
 ASSIGNMENT OF ERROR IX "[HA] WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS BECAUSE OF PROSECUTORIAL MISCONDUCT AT TRIAL AND DURING CLOSING ARGUMENT."
 {¶ 61} In his sixth and seventh assignments of error, Ha takes issue with the jury verdict forms. In his ninth assignment of error he alleges prosecutorial misconduct. We decline to address these assigned errors.
 {¶ 62} At the outset, we note that Ha failed to object to any of these issues at trial. Because Ha failed to object to these issues before the trial court, he has forfeited them, and this court need not address them on appeal absent a showing of plain error. Hairston, supra, at¶ 9. Ha has neither raised plain error nor has he demonstrated why we should delve into these issues for the first time on appeal.Meyers, supra, at ¶ 42, citing In re L.A.B., supra, at ¶ 19.
 "It is a well established rule that an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have *Page 24 
called, but did not call, to the attention of the trial court at the time when such error could have been avoided or corrected by the trial court. His failure to raise this issue before the trial court forfeited the objection for purposes of this appeal." (Internal citations and quotations omitted.) Bretzfelder v. Bretzfelder, 9th Dist. No. 23674, 2008-Ohio-2669, citing State v. Payne, 114 Ohio St. 3d 502, 2007-Ohio-4642, at ¶ 23.
 {¶ 63} Accordingly, we decline to address Ha's sixth, seventh, and ninth assignments of error.
 ASSIGNMENT OF ERROR X "[HA] WAS DENIED HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN DEFENSE COUNSEL FAILED TO PROTECT HIS RIGHTS DURING TRIAL."
 {¶ 64} In his tenth assignment of error, Ha contends that he was denied his right to the effective assistance of counsel when his counsel failed to protect his rights during trial. We do not agree.
 {¶ 65} In considering a defendant's claim of ineffective assistance of counsel, this court employs a two-step process. Strickland v.Washington (1984), 466 U.S. 668, 669. First, we must determine whether trial counsel engaged in a "`substantial violation of any *** essential duties to his client.'" State v. Bradley (1989), 42 Ohio St.3d 136, 141, quoting State v. Lytle (1976), 48 Ohio St.2d 391, 396. Second, we must determine if the trial counsel's ineffectiveness resulted in prejudice to the defendant. Bradley, 42 Ohio St.3d at 141-142, quotingLytle, 48 Ohio St.2d at 396-397.
 {¶ 66} A defendant may demonstrate prejudice in cases where there is a reasonable probability that the trial result would have been different but for the alleged deficiencies of counsel. Bradley, 42 Ohio St.3d 136, at paragraph three of the syllabus.
 {¶ 67} Ha contends that his counsel was ineffective for a variety of reasons, including: failing to object to the jury charge that did not provide an instruction on the underlying charge of *Page 25 
illegal cultivation of marijuana, the jury verdict form that allowed for the offense of illegal cultivation of marijuana rather than conspiracy to cultivate marijuana, the submission of eight separate alleged overt acts without requiring the jury to unanimously elect one of those acts as having been proven beyond a reasonable doubt, and for failing to object on double jeopardy grounds when the trial court allowed the jury to consider charges of conspiracy to cultivate an amount of marijuana already determined in Ha's favor, and for failing to object to unfairly prejudicial misconduct of the prosecutor.
 {¶ 68} We have consistently held that "`trial counsel's failure to make objections is within the realm of trial tactics and does not establish ineffective assistance of counsel.'" State v. Windham, 9th Dist. No. 05CA0033, 2006-Ohio-1544, at ¶ 24, quoting, State v.Taylor, 9th Dist. No. 01CA007945, 2002-Ohio-6992, at ¶ 76; State v.Guenther, 9th Dist. No. 05CA008663, 2006-Ohio-767, at ¶ 74. Ha's argument that "[b]ecause Mr. Ha's attorney was severely deficient in failing to object to the many procedural irregularities at trial, or the improper arguments of the State's attorney, Mr. Ha has suffered unfair prejudice at trial[,]" falls short of satisfying his burden of proof that his counsel's failure to object was so serious as to deprive him of a fair trial. "There are numerous avenues through which counsel can provide effective assistance of counsel in any given case, and debatable trial strategies do not constitute ineffective assistance of counsel."State v. Diaz, 9th Dist. No. 04CA008573, 2005-Ohio-3108, at ¶ 23. Even if we question trial counsel's strategic decisions, we must defer to his judgment. State v. Clayton (1980), 62 Ohio St.2d 45, 49. The Ohio Supreme Court has stated that
 "`[w]e deem it misleading to decide an issue of competency by using, as a measuring rod, only those criteria defined as the best of available practices in the defense field.' *** Counsel chose a strategy that proved ineffective, but the fact that there was another and better strategy available does not amount to a breach of an essential duty to his client." Id. quoting Lytle, 48 Ohio St.2d at 396. *Page 26 
 {¶ 69} Finally, even if we were to agree with Ha that his trial counsel was ineffective, Ha has failed to demonstrate that absent this ineffectiveness the result of his trial would have been different. Accordingly, Ha's tenth assignment of error is overruled.
 III. {¶ 70} Ha's assignments of errors are overruled and the judgment of the Medina County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
SLABY, J. WHITMORE, J. CONCUR
[1] We conclude from the context of the record that it is clear that counsel's response meant that he agreed that the motion to suppress was limited to the two issues articulated by the trial court and that he had no further objections. *Page 1