[Cite as *State v. Dixon*, 2016-Ohio-1491.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

STATE OF OHIO,                          :
                                        :       Case No. 15CA3680
        Plaintiff-Appellee,             :
                                        :
        vs.                             :       DECISION AND JUDGMENT
                                        :       ENTRY
LARRY DIXON,                            :
                                        :
        Defendant-Appellant.            :       **Released: 04/06/16**
_____

APPEARANCES:

James S. Sweeney, James Sweeney Law, LLC, Columbus, Ohio, for
Appellant.

Mark E. Kuhn, Scioto County Prosecuting Attorney, and Shane A. Tieman,
Scioto County Assistant Prosecuting Attorney, Portsmouth, Ohio, for
Appellee.
_____

McFarland, J.

        {¶1} Larry Dixon appeals from his convictions and sentences imposed

by the Scioto County Court of Common Pleas after a jury found him guilty

of possession and trafficking in both cocaine and heroin.  On appeal,

Appellant contends that 1) the trial court erred when it failed to grant his

motion for acquittal as the guilty verdicts at the trial court were not

supported by sufficient evidence; 2) the trial court erred when it entered a

judgment against him when the judgment was not supported by the manifest

weight of the evidence; 3) the prosecuting attorney's remarks during closing argument constituted prosecutorial misconduct and plain error which deprived him of a fair trial in violation of the United States Constitution; 4) the trial court erred in failing to properly advise him of the consequences of violating postrelease control, rendering his conviction partially void; and 5) he received ineffective assistance of counsel to a degree that he did not receive a fair trial.

{¶2} Because we have concluded that Appellant's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence, Appellant's first and second assignments of error are overruled. Further, as we did not find that the prosecutor's comments during closing argument rose to the level of plain error, Appellant's third assignment of error is overruled. With respect to Appellant's fourth assignment of error, we conclude that the trial court erred in failing to properly impose postrelease control and as such, the postrelease control portion of Appellant's sentence is vacated and the matter is remanded to the trial court for re-sentencing. Finally, because we cannot conclude that trial counsel's representation was deficient, Appellant's fifth and final assignment of error is overruled. Accordingly, Appellants convictions are

affirmed; however, the postrelease control portion of his sentence is vacated and the matter is remanded for the proper imposition of postrelease control.

FACTS

{¶3} In the early morning hours on September 16, 2014, Trooper Nick Lewis, with the Ohio State Highway Patrol, stopped a vehicle driven by Appellant, Larry Dixon. Lewis was assigned to the drug interdiction team and had been informed that there was a large supplier of crack cocaine in Chillicothe. Lewis initially ran the tag as the vehicle passed by on U.S. Route 23 and determined that the vehicle was owned by an older female in Chillicothe. After Lewis began following the vehicle, he observed a traffic violation and initiated a traffic stop.

{¶4} When he approached the stopped vehicle, Appellant, who was driving the vehicle, informed Lewis he did not have a driver's license or identification. Lewis patted down Appellant and placed him in the back of the cruiser. When Lewis noted that he smelled marijuana, Appellant stated marijuana had been smoked in the vehicle earlier, but not by him. Lewis then asked the passenger, Lawrence Barnes, to exit the vehicle. While patting Barnes down, Barnes began to resist and a struggle ensued in which both Lewis and Barnes went out of view of the trooper cam. Lewis later testified during trial that during the pat down he felt an object in Barnes'

pants, asked Barnes to remove the object and at that time Barnes began to pull away from him. After reinforcements arrived, Barnes was again searched but the object was no longer on his person. He was cuffed and placed in the cruiser while the troopers searched the area.

{¶5} Trooper Basdin, who had arrived to assist Lewis, found a white object lying in the grass in the area where Barnes and Lewis had struggled. The contents were later identified as 22.464 grams of cocaine and 3.993 grams of heroin, the identity and weight of which the parties stipulated at trial. The heroin was packaged into thirty-one small baggies, which Lewis testified typically indicates they have been prepared for sale. Lewis also testified that the drugs were concealed in the rear of Barnes' pants. Both Appellant and Barnes were Mirandized, placed under arrest and transported to the Highway Patrol Post.

{¶6} Trooper Lewis testified that while at the post, he reviewed the recording from the trooper cam. Not only did the camera record what occurred outside the vehicle, but a recording was also made of Appellant and Barnes while they were in the backseat of the cruiser. After hearing comments by both Appellant and Barnes on the video, Lewis asked Appellant if he would like to provide a written statement, however, Appellant declined. Lewis testified that he asked Appellant if he smoked

crack cocaine, to which Appellant replied that he did.  Appellant further stated that although they had not discussed details, Barnes was to pay Appellant in either cash or crack cocaine for transporting him.

{¶7} Subsequently, on November 4, 2014, Appellant and Lawrence Barnes were both indicted on four felony counts, including count one, trafficking in cocaine, a felony of the second degree in violation of R.C. 2925.03(A)(2) and 2925.03(C)(4)(e); count two, possession of cocaine, a felony of the second degree in violation of R.C. 2925.11(A) and 2925.11(C)(4)(d); count three, trafficking in heroin, a felony of the third degree in violation of R.C. 2925.03(A)(2) and 2925.03(C)(6)(d); and count four, possession of cocaine, a felony of the third degree in violation of R.C. 2925.11(A) and 2925.11(C)(6)(c).[1]  A fifth count was contained in the indictment, which charged obstructing official business, a fifth degree felony in violation of R.C. 2921.31(A) and 2921.31(B), however, this count only applied to Barnes.

{¶8} A one-day jury trial was held on December 15, 2014.  The State presented the testimony of Troopers Lewis and Basdin, and played the video of the trooper cam for the jury.  Appellant, through counsel, made a motion for dismissal pursuant to Crim.R. 29(A), which was denied by the trial court.

---

[1] Counts three and four were later amended to fourth degree felonies.

The defense then rested without presenting any evidence.  The jury subsequently found Appellant guilty of all four counts of the indictment.  As such, the trial court entered convictions on each count and sentenced Appellant to a total mandatory prison term of four years.[2]  The trial court further imposed a mandatory three-year term of postrelease control.  It is from this judgment entry that Appellant brings his current appeal, setting forth five assignments of error for our review.[3]

ASSIGNMENTS OF ERROR

"I.     THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT THE DEFENDANT'S [SIC] MOTION FOR ACQUITTAL AS THE GUILTY VERDICTS AT THE TRIAL COURT WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE.

II.     THE TRIAL COURT ERRED WHEN IT ENTERED A JUDGMENT AGAINST THE APPELLANT WHEN THE JUDGMENT WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.

III.    THE PROSECUTING ATTORNEY'S REMARKS DURING CLOSING ARGUMENTS CONSTITUTED PROSECUTORIAL MISCONDUCT AND PLAIN ERROR WHICH DEPRIVED APPELLANT OF A FAIR TRIAL IN VIOLATION OF THE UNITED STATES CONSTITUTION.

IV.    THE TRIAL COURT ERRED IN FAILING TO PROPERLY ADVISE APPELLANT OF THE CONSEQUENCES OF

---

[2] In sentencing Appellant, the trial court imposed a four-year mandatory term as to count one, merged count two with count one, imposed a stated prison term of eighteen months on count three, and merged count four with count three.  The trial court then ordered the sentences to be served consecutively for a total term of four years.

[3] Appellant appealed from the trial court's nunc pro tunc judgment entry entered on January 9, 2015.

VIOLATING POSTRELEASE CONTROL RENDERING APPELLANT'S CONVICTION PARTIALLY VOID.

V.      APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL TO A DEGREE THAT APPELLANT DID NOT RECEIVE A FAIR TRIAL."

ASSIGNMENT OF ERROR I

{¶9} In his first assignment of error, Appellant contends that the trial court erred when it failed to grant his motion for acquittal, as the guilty verdicts were not supported by sufficient evidence. "A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386 (2006), ¶ 37. When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997) (stating that "sufficiency is a test of adequacy"); *State v. Jenks*, 61 Ohio St.3d 259, 274, 574 N.E.2d 492 (1991). The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a

reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, (1979); *Jenks* at ¶ 273.

{¶10} Furthermore, a reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *Thompkins* at ¶ 390.  Thus, when reviewing a sufficiency-of-the-evidence claim, an appellate court must construe the evidence in a light most favorable to the prosecution. *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. Grant*, 67 Ohio St.3d 465, 477, 620 N.E.2d 50 (1993).  A reviewing court will not overturn a conviction on a sufficiency-of-the-evidence claim unless reasonable minds could not reach the conclusion that the trier of fact did. *State v. Tibbetts*, 92 Ohio St.3d 146, 162, 749 N.E.2d 226 (2001); *State v. Treesh*, 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001).

{¶11} On appeal, Appellant challenges the sufficiency of the evidence presented by the State in support of the offenses for which he was charged and convicted, possession and trafficking of cocaine and heroin.  R.C. 2925.03(A)(2) governs trafficking offenses and provides as follows:

"(A) No person shall knowingly do any of the following:

＊ ＊ ＊

(2) Prepare for shipment, ship, transport, deliver, prepare for

distribution, or distribute a controlled substance or a controlled

substance analog, when the offender knows or has reasonable

cause to believe that the controlled substance or a controlled

substance analog is intended for sale or resale by the offender

or another person."

R.C. 2925.11(A) governs drug possession offenses and provides in section

(A) that "[n]o person shall knowingly obtain, possess, or use a controlled

substance or a controlled substance analog."

{¶12} Appellant contends that the State failed to prove beyond a

reasonable doubt that he knowingly shipped the illegal drugs in question and

that he had either actual or constructive possession of them. "A person acts

knowingly, regardless of his purpose, when he is aware that his conduct will

probably cause a certain result or will probably be of a certain nature. A

person has knowledge of circumstances when he is aware that such

circumstances probably exist." R.C. 2901.22(B). "[P]ossession" is defined

as "having control over a thing or substance, but may not be inferred solely

from mere access to the thing or substance through ownership or occupation

of the premises upon which the thing or substance is found." R.C.

2925.01(K). "Possession may be actual or constructive." *State v. Moon*, 4th

Dist. Adams No. 08CA875, 2009-Ohio-4830, ¶ 19; citing *State v. Butler,* 42 Ohio St.3d 174, 175, 538 N.E.2d 98 (1989) ("[t]o constitute possession, it is sufficient that the defendant has constructive possession").

{¶13} " 'Actual possession exists when the circumstances indicate that an individual has or had an item within his immediate physical possession.' " *State v. Kingsland*, 177 Ohio App.3d 655, 2008-Ohio-4148, 895 N.E.2d 633, ¶ 13 (4th Dist.); quoting *State v. Fry*, 4th Dist. Jackson No. 03CA26, 2004-Ohio-5747, ¶ 39. "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Hankerson,* 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus; *State v. Brown*, 4th Dist. Athens No. 09CA3, 2009-Ohio-5390, ¶ 19. For constructive possession to exist, the state must show that the defendant was conscious of the object's presence. *Hankerson* at ¶ 91; *Kingsland* at ¶ 13. Both dominion and control, and whether a person was conscious of the object's presence may be established through circumstantial evidence. *Brown* at ¶ 19. "Moreover, two or more persons may have joint constructive possession of the same object." Id.

{¶14} "Although a defendant's mere proximity is in itself insufficient to establish constructive possession, proximity to the object may constitute

some evidence of constructive possession. * * * Thus, presence in the vicinity of contraband, coupled with another factor or factors probative of dominion or control over the contraband, may establish constructive possession." *Kingsland* at ¶ 13; *State v. Criswell*, 4th Dist. Scioto No. 13CA3588, 2014-Ohio-3941, ¶ 11.

{¶15} In support of his contention that the State failed to demonstrate Appellant knowingly shipped drugs, Appellant notes that he repeatedly denied to Trooper Lewis that there was anything illegal in the vehicle. He further argues that the statement he made indicating "they found it[,]" could be attributed to the fact that he had likely seen Barnes toss the drugs during the struggle with Lewis and was simply commenting that the troopers had found the drugs. Based upon our review of the record, we reject Appellant's arguments regarding whether the State demonstrated Appellant had knowledge of the drugs.

{¶16} A review of the record indicates that upon being stopped, Appellant was cooperative with Trooper Lewis and denied that there was anything illegal in the car. He admitted marijuana had been smoked in the vehicle earlier, but not by him. Once Barnes was placed in the cruiser with him, Appellant and Barnes conversed and Appellant made multiple statements which seemingly denied any knowledge of illegal drugs in the

vehicle. However, once the troopers found the bag of drugs in the grassy area on the side of the road, Appellant stated "they found it." At that point, the conversation took a turn. Barnes then began to question Appellant as to whether he had set him up, and whether Appellant was a confidential informant. These questions, though lodged by Barnes, infer Appellant knew Barnes was carrying drugs.

{¶17} Further, a review of the trial transcript indicates Trooper Lewis testified that when Barnes pulled away from him a second time, the video shows Barnes had his hand down the back of his pants. The inference from this testimony is that this is likely the point in which Barnes tossed the bag of drugs.[4] A review of the video, however, indicates that Barnes pulled away from Lewis right in front of the cruiser. It appears from our review of the trooper cam that Appellant was staring off to the side when this initial struggle between Barnes and Lewis began, and then at some point Appellant noticed that something was happening off to the side of the vehicle. In fact, a review of the trooper cam video reveals that when Barnes was placed into the cruiser, Appellant asked him what happened and stated he didn't see what happened. Additionally, as noted by the State, at one point on the video Appellant can be heard stating "[w]e're fucked." Such a statement

---

[4] This Court, after reviewing the video, was unable to determine the point in which Barnes tossed the drugs.

implies Appellant and Barnes were acting together, or at a minimum that Appellant was complicit in Barnes' conduct. These facts contradict Appellant's argument that his statement "they found it" was simply in reference to him having seen Barnes toss the bag of drugs into the grass.

{¶18} Appellant also argues that the fact that he was to allegedly be paid in crack cocaine or cash does not mean that he knew Barnes had crack cocaine or heroin on his person at the time they were stopped. A review of the record indicates that after being Mirandized, and while at the State Highway Patrol Post, Appellant admitted to Trooper Lewis that he smoked crack cocaine and that he was to be paid in either cash or crack cocaine to drive Barnes to Kentucky. The significance of this statement is better understood when considered in light of testimony by Trooper Lewis that based upon his experience working drug interdiction, drugs travel south and money travels north. While it is not out of the realm of possibility that Appellant was completely clueless as to Barnes' possession of drugs and thought Barnes would obtain drugs to pay him once they arrived at their destination, a more realistic scenario, construing the facts in a light most favorable to the prosecution, is that Appellant knew he was transporting Barnes, who was carrying drugs, and that in exchange for providing transportation, Appellant would either be paid in cash that would be

obtained after said drugs were sold, or would be paid a portion of the drugs that were being transported. Coupled with Appellant's comments that "they found it" and "[w]e're fucked[,]" as well as Barnes' accusations that Appellant had set him up, we cannot conclude that the State failed to prove Barnes was carrying drugs and was transporting them for sale, and that Appellant had knowledge of these facts, and was complicit in this conduct.

{¶19} Appellant further contends that because the drugs were found between Barnes' buttocks, Appellant did not have actual or constructive possession of them. Appellant argues that finding him in constructive possession of the drugs at issue would require a belief that Appellant had dominion and control over something that was in a very private part of another's body. However, this Court has found constructive possession in such circumstances. For example, in *State v. Crocker*, 2015-Ohio-2528, 38 N.E.3d 369, this Court found that the driver of a vehicle had knowledge of and was in constructive possession of heroin and cocaine that was concealed in the vagina of the passenger of the vehicle. In determining Crocker had knowledge of the drugs, we took into consideration text messages appearing on Crocker's phone and statements made by Crocker on the jail telephone indicating he had knowledge of the drugs. Id. at ¶ 27. After concluding Crocker had knowledge of the drugs, and noting the fact that Crocker drove

the rental car that was transporting the drugs, we further concluded that Crocker was in a position to control the contraband. Id. Ultimately, we determined in *Crocker* that the trial court reasonably concluded "that Crocker knew about the heroin and cocaine and that he exercised dominion and control over the drugs by knowingly transporting them in the rental car." Id. at ¶ 28.

{¶20} Here, we have determined that the facts, if believed and considered in a light most favorable to the prosecution, demonstrate that Appellant had knowledge of the drugs at issue. Here, like in *Crocker,* Appellant was the driver of the vehicle transporting the drugs. The vehicle at issue was registered to Appellant's mother, thus this is not a situation where Appellant was simply driving Barnes' vehicle. Appellant apparently obtained a vehicle from his mother to transport Barnes, who was carrying drugs, to Kentucky, in exchange for payment in the form of either cash or crack cocaine. Based upon these facts, and relying on our prior reasoning in *Crocker*, we conclude that the State demonstrated that Appellant knowingly transported drugs and that by driving the vehicle in which they were being transported, he exercised dominion and control over the drugs. As such, although Appellant was not in actual possession of the drugs, he constructively possessed them. In light of the foregoing, we cannot

conclude that the trial court erred in denying Appellant's Crim.R. 29(A) motion for acquittal.  Accordingly, Appellant's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

{¶21} In his second assignment of error, Appellant contends that the trial court erred when it entered a judgment against him when the judgment was not supported by the manifest weight of the evidence.  Appellant relies on the same argument presented in his first assignment of error, contending that the State failed to demonstrate that he was aware of the drugs found on Barnes' person, and failed to demonstrate Appellant was in actual or constructive possession of the drugs.

{¶22} When considering whether a conviction is against the manifest weight of the evidence, our role is to determine whether the evidence produced at trial "attains a high degree of probative force and certainty required of a criminal conviction." *State v. Fry*, supra, at ¶ 34; quoting *State v. Getsy*, 84 Ohio St.3d 180, 193, 702 N.E.2d 866 (1998).  The reviewing court sits, essentially, as a " 'thirteenth juror' and [may] disagree [ ] with the fact finder's resolution of the conflicting testimony." *Fry*, supra; quoting *State v. Thompkins* at 387; quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211 (1982).  The reviewing court must dutifully examine the entire

record, weighing the evidence and considering the credibility of witnesses, but keeping in mind that credibility generally is an issue for the trier of fact to resolve. *Fry*, supra; citing *State v. Thomas*, 70 Ohio St.2d 79, 80, 434 N.E.2d 1356 (1982); *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶23} The reviewing court may reverse the conviction if it appears that the factfinder, in resolving evidentiary conflicts, " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Thompkins* at 387; quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983). On the other hand, we will not reverse a conviction if the State presented substantial evidence upon which the trier of fact could reasonably conclude that all essential elements of the offense had been established beyond a reasonable doubt. *Fry*, supra; citing *State v. Eley*, 56 Ohio St.2d 169, 383 N.E.2d 132 (1978), syllabus.

{¶24} We have addressed in detail the evidence presented at trial in addressing Appellant's first assignment of error, where we determined that Appellant's convictions were supported by sufficient evidence, and as such, the trial court did not err in denying Appellant's Crim.R. 29(A) motion for acquittal. In light of the evidence that was presented, as discussed above, we

find there was not only sufficient evidence, but substantial evidence upon which the trier of fact reasonably could conclude that the essential elements of the above offenses have been established beyond a reasonable doubt.

{¶25} Although the State acknowledges that some of Appellant's statements were subject to interpretation, we agree with the State that they could also be interpreted to indicate knowledge. Likewise, we conclude the facts before us constitute substantial evidence that Appellant was in constructive possession of the drugs by driving the vehicle in which the drugs were being transported. Further, we are mindful that credibility generally is an issue for the trier of fact to resolve. The jury clearly believed the State's version of events and afforded weight accordingly to the statements made by Appellant. Based upon the evidence it had before it, we cannot conclude that the jury clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed. Accordingly, Appellant's second assignment of error is overruled.

ASSIGNMENT OF ERROR III

{¶26} In his third assignment of error, Appellant contends that the prosecuting attorney's remarks during closing argument constituted prosecutorial misconduct and plain error which deprived Appellant of a fair trial in violation of the United States Constitution. Failure to object to an

alleged error waives all but plain error. *State v. Keeley*, 4th Dist. Washington No. 11CA5, 2012-Ohio-3564, ¶ 28.  Notice of Crim.R. 52(B) plain error must be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *State v. Rohrbaugh*, 126 Ohio St.3d 421, 2010-Ohio-3286, 934 N.E.2d 920, ¶ 6; *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.  To find plain error, the outcome of trial must clearly have been otherwise. *State v. McCausland*, 124 Ohio St.3d 8, 2009-Ohio-5933, 918 N.E.2d 507, ¶ 15; *State v. Braden*, 98 Ohio St.3d 354, 2003-Ohio-1325, 785 N.E.2d 439, ¶ 50.

{¶27} "The test for prosecutorial misconduct is whether the conduct was improper and, if so, whether the rights of the accused were materially prejudiced." *State v. Purdin*, 4th Dist. Adams No. 12CA944, 2013-Ohio-22, ¶ 31; quoting *State v. Leonard*, 4th Dist. Athens No. 08CA24, 2009-Ohio-6191, ¶ 36; citing *State v. Smith*, 97 Ohio St.3d 367, 2002-Ohio-6659, 780 N.E.2d 221, ¶ 45; in turn citing *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984).  "The 'conduct of a prosecuting attorney during trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial.' " *Purdin* at ¶ 31; quoting *State v. Givens*, 4th Dist. Washington No. 07CA19, 2008-Ohio-1202, ¶ 28; quoting *State v. Gest*, 108 Ohio App.3d 248, 257, 670 N.E.2d 536 (8th Dist. 1995).  Accord *State v. Apanovitch*, 33

Ohio St.3d 19, 24, 514 N.E.2d 394 (1987). "Prosecutorial misconduct

constitutes reversible error only in rare instances." *Purdin*, supra; quoting

*State v. Edgington*, 4th Dist. Ross No. 05CA2866, 2006-Ohio-3712, ¶ 18;

citing *State v. Keenan*, 66 Ohio St.3d 402, 406, 613 N.E.2d 203 (1993). The

"touchstone analysis * * * is the fairness of the trial, not the culpability of

the prosecutor. * * * The Constitution does not guarantee an 'error free,

perfect trial.' " *Purdin* at ¶ 31; quoting *Leonard* at ¶ 36; quoting *Gest* at

¶ 257.

{¶28} Appellant contends that the following statement by the

prosecution constituted prosecutorial misconduct: "Midnight, African

American male asks for a ride to Portsmouth and he will pay you in crack or

money." Appellant argues that the statement was essentially a racially

biased argument by the prosecution that suggested that because Appellant

was giving a ride to an African-American late at night "that something

nefarious was afoot." Appellant argues the comment was inflammatory and

constituted plain error. However, based upon the following reasons, we

disagree.

{¶29} We initially note that we agree with Appellant that the

comment made during closing by the prosecution may have been

inappropriate, yet we cannot conclude that but for the comment the outcome

of the trial would have been different. As set forth above, we have already noted that Appellant's convictions were based upon sufficient evidence and were not against the manifest weight of the evidence. Further, this solitary and isolated comment made by the prosecution was made during closing arguments. The jury was instructed that "* * * attorneys are not witnesses, and since it is your duty to decide the case solely on the evidence which you see and here [sic] in this case, you must not consider as evidence any statement of any attorney made during the trial." The jury was further instructed that "* * * the evidence does not include any statement of counsel made during the trial, unless such statement was an admission or agreement admitting certain facts. The opening statements and the closing arguments of the counsel are designed to assist you, but they are not evidence." " 'A presumption always exists that the jury has followed the instructions given to it by the trial court.' " *State v. Murphy*, 4th Dist. Scioto No. 09CA3311, 2010-Ohio-5031, ¶ 81; quoting *Pang v. Minch*, 53 Ohio St.3d 186, 559 N.E.2d 1313 (1990), paragraph four of the syllabus.

{¶30} Bearing in mind our plain error standard of review, considering that this statement was made one time during closing arguments, and in light of the other evidence before the jury, we cannot conclude that Appellant would not have been convicted but for the prosecutions' reference to the

race of Appellant's co-defendant. As such, Appellant has failed to demonstrate plain error. Accordingly, Appellant's third assignment of error is overruled.

ASSIGNMENT OF ERROR IV

{¶31} In his fourth assignment of error, Appellant contends that the trial court erred in failing to properly advise him of the consequences of violating postrelease control, which Appellant claims rendered his convictions partially void. More specifically, Appellant contends that although the trial court informed him that he may receive a prison term for the commission of a new felony while on postrelease control, and that that prison term may be imposed "in addition to" any other prison term imposed for the new offense, the trial court failed to inform him that a prison term imposed for the commission of a new felony will be served "consecutively" to the prison term for the violation of postrelease control. The State argues that "in addition to" means essentially the same thing as "consecutive to," but concedes that this notification does not meet the sentencing requirements for postrelease control notifications set forth in *State v. Pippen*, 4th Dist. Scioto No. 14CA3595, 2014-Ohio-4454.

{¶32} "Generally, when reviewing felony sentences, we apply the standard of review set forth in R.C. 2953.08(G)(2)." *State v. Baker*, 4th Dist.

Athens No. 13CA18, 2014-Ohio-1967, ¶ 25.  See also *State v. Brewer*, 4th

Dist. Meigs No. 14CA1, 2014-Ohio-1903, ¶ 33 ("we join the growing

number of appellate districts that have abandoned the *Kalish* plurality's

second-step abuse-of-discretion standard of review; when the General

Assembly reenacted R.C. 2953.08(G)(2), it expressly stated that '[t]he

appellate court's standard of review is not whether the sentencing court

abused its discretion' ").[5]

{¶33} Under R.C. 2953.08(G)(2), we may only modify or vacate a

defendant's sentence if we find, clearly and convincingly, that (1) the record

does not support the mandatory sentencing findings, or (2) that the sentence

is "otherwise contrary to law."  We recognize that this is an "extremely

deferential standard of review." *State v. Venes*, 2013-Ohio-1891, 992 N.E.2d

453, at ¶ 21.  Although *Kalish* may not provide the standard of review

framework for reviewing felony sentences, it does provide guidance for

determining whether a sentence is clearly and convincingly contrary to law.

See *State v. Lee*, 12th Dist. Butler No. CA2012-09-182, 2013-Ohio-3404,

¶ 10.  According to *Kalish*, a sentence is not clearly and convincingly

contrary to law when the trial court considers the purposes and principles set

forth in R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly

---

[5] *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124.

applies postrelease control, and sentences within the permissible statutory range. Id.; See also *Kalish* at ¶ 18.

{¶34} In *State v. Pippen*, supra, this Court held that a trial court must incorporate notice of the sanctions set forth in R.C. 2929.141(A) when giving its notification of the potential penalties for violations of postrelease control. More specifically, we held the court must include a notification that a prison term imposed for commission of a new felony during a term of postrelease control will be served *consecutively* to the prison term imposed by the court for the violation of postrelease control. *Pippen* at ¶ 24. Here, the trial court advised Appellant as follows, both on the record and in the sentencing entry, with respect to postrelease control violations:

> "If the violation is a new felony, Defendant may receive a
>
> prison term of the greater of one year, or the time remaining on
>
> post release control, in addition to any other prison term
>
> imposed for the new offense."

Thus, the entry does not state that the prison term must be served *consecutively* to the term imposed for the violation of postrelease control.

{¶35} Under our holding in *Pippen*, the trial court's failure to advise Appellant of all the consequences of violating postrelease control renders that part of the sentence void and we must set it aside. *Pippen* at ¶ 25; citing

*State v. Fischer*, 128 Ohio St.3d 92, 942 N.E.2d 332, 2010-Ohio-6238, ¶ 26.

Despite a split amongst appellate districts regarding whether this notification

is required, this Court recently adhered to our prior holding in *Pippen* in

*State v. Adkins*, 4th Dist. Lawrence No. 14CA29, 2015-Ohio-2830 ¶ 16

(acknowledging different holdings by different districts on this particular

question but reasoning that "principles of stare decisis require that we follow

our prior holding in *Pippen* unless there is a 'special justification' to depart

from it.").

{¶36} Thus, we find merit to Appellant's argument that the trial court

erred in failing to properly impose postrelease control, however, we disagree

with Appellant's conclusion that such error renders his convictions void.

Instead, we conclude that the error renders only the postrelease control

portion of Appellant's sentence void.  Id. at ¶ 20.  As such, we find merit to

Appellant's fourth assignment of error.  Accordingly, we order the

postrelease control portion of Appellant's sentence to be vacated, and

remand this matter to the trial court for re-sentencing.

ASSIGNMENT OF ERROR V

{¶37} In his fifth and final assignment of error, Appellant contends

that he received ineffective assistance of counsel to a degree that he did not

receive a fair trial.  Criminal defendants have a right to counsel, including a

right to the effective assistance from counsel. *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, fn. 14 (1970); *State v. Stout*, 4th Dist. Gallia No. 07CA5, 2008-Ohio-1366, ¶ 21. To establish constitutionally ineffective assistance of counsel, a criminal defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, (1984); *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Goff*, 82 Ohio St.3d 123, 139, 694 N.E.2d 916 (1998). "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation. To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95. "Failure to establish either element is fatal to the claim." *State v. Jones*, 4th Dist. Scioto No. 06CA3116, 2008-Ohio-968, ¶ 14.

{¶38} "When considering whether trial counsel's representation amounts to deficient performance, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *State v. Walters*, 4th Dist. Washington Nos.

13CA33, 13CA36, 2014-Ohio-4966, ¶ 23; quoting *Strickland* at 689, 104 S.Ct. 2052. "Thus, 'the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.' " Id.; quoting *Strickland* at 689. " 'A properly licensed attorney is presumed to execute his duties in an ethical and competent manner.' " Id.; quoting *State v. Taylor*, 4th Dist. Washington No. 07CA11, 2008-Ohio-482, ¶ 10. "Therefore, a defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment." Id.

{¶39} Appellant contends that his trial counsel was deficient in two ways. First, he argues that trial counsel failed to but should have objected to the admission of testimony pertaining to his prior drug use. Specifically, Appellant claims his trial counsel should have objected to testimony in which Appellant, in response to Trooper Lewis' inquiry, stated he smokes crack cocaine. Appellant argues that the admission of this statement should have been excluded under Evid.R. 404(B) as evidence of other crimes, wrongs, or acts, which are not admissible to prove the character of a person or to show action in conformity therewith. The State responds by arguing that this testimony was not improper character testimony, but rather was an

admission against interest by Appellant. The State further argues that even if the statement could be considered other acts testimony, evidence of motive is admissible under other acts.

{¶40} At trial, Trooper Lewis testified as follows:

"I had asked Mr. Dixon if he wanted to give me a written statement. He said at the time he didn't want to give a written statement. But as I'm sitting there doing my paperwork, the incarceration forms, writing out his citation and things like that, I began to talk to him and asked him, you know, if he smoked crack cocaine. He advised that he did smoke crack cocaine. I also asked if he was getting paid to take Mr. Barnes to – they – they told me they were going to Kentucky, originally. I asked him if he was getting paid to go to Kentucky. He said he didn't know. I asked him if he was going to get some of the crack cocaine. He said they didn't discuss details, he just knew that he was getting paid to take him down there, whether it would be cash or crack cocaine."

{¶41} As argued by Appellant, under Evid.R. 404(B), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove" a defendant's character or in order to show criminal propensity. However, as also argued

by the State, it may be admissible to show "*motive*, opportunity, intent, preparation, plan, *knowledge*, identity, or absence of mistake or accident." (Emphasis added). We find that here, Appellant's statement was admissible for purposes of showing knowledge of the existence of the drugs at issue, as well as motive for his involvement in the transportation of the drugs. Thus, we cannot say that counsel's performance was deficient for failing to object to the admission of the statement, or that Appellant was prejudiced by the failure to object. Further, as noted by the State, it is apparent that part of defense counsel's strategy was to paint the picture that Appellant was a drug user, but not a trafficker, and counsel for Appellant argued to that effect during closing arguments. Thus, it is reasonable to conclude that defense counsel did not object to the admission of the statement for tactical reasons. As such, we cannot conclude that Appellant has overcome the presumption that counsel's actions were sound trial strategy.

{¶42} Secondly, Appellant argues that trial counsel failed to object to the playing of the videotaped statements between him and Barnes, as Barnes was unable to be subjected to cross-examination. Appellant contends this evidence violated his Sixth Amendment right of confrontation. The State responds by primarily arguing that Appellant had no reasonable expectation of privacy regarding statements made in the back of a police cruiser. The

State also argues that a recording of Appellant's own actions and reactions does not implicate the confrontation clause, that the statements of Barnes were not offered for the truth of the matter asserted, and that playing the video tape was part of defense counsel's trial strategy.

{¶43} "[T]he admission or exclusion of evidence generally rests in the trial court's sound discretion." *State v. Jeffers*, 4th Dist. Gallia No. 08CA7, 2009-Ohio-1672, ¶ 17; citing *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987). "However, questions concerning evidentiary issues that also involve constitutional protections, including confrontation clause issues, should be reviewed de novo." *Jeffers* at ¶ 17; citing *State v. Hardison*, 9th Dist. Summit No. 23050, 2007-Ohio-366.

{¶44} The Sixth Amendment to the United States Constitution provides, "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." The Supreme Court of the United States has "held that this bedrock procedural guarantee applies to both federal and state prosecutions." *Crawford v. Washington*, 541 U.S. 36, 42, 124 S.Ct. 1354, (2004); citing *Pointer v. Texas*, 380 U.S. 400, 406, 85 S.Ct. 1065, (1965). Likewise, Section 10, Article I of the Ohio Constitution provides, "[i]n any trial, in any court, the party accused shall be allowed * * * to meet the witnesses face to face." Before its admission,

"[w]here testimonial evidence is at issue * * * the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross examination." *Crawford*, 541 U.S. at 68.

{¶45} The threshold inquiry is whether the challenged out-of-court statements were testimonial in nature and needed to be tested by confrontation. See *State v. Lewis*, 1st Dist. Hamilton Nos. C-050989 and C060010, 2007-Ohio-1485, ¶ 30. Statements are "testimonial when the circumstances objectively indicate that there is no * * * ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later prosecution." *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, (2006); see also *State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, paragraph one of the syllabus. Although the Supreme Court of the United States has not specifically defined what constitutes a "testimonial" statement, it has been held, at a minimum, to apply to "prior testimony at a preliminary hearing, before a grand jury, or at a former trial, and responses to police interrogations." *State v. Mills*, 2nd Dist. Montgomery No. 21146, 2005-Ohio-2128, ¶ 17; See also *State v. Ha*, 9th Dist. Medina No. 07CA0089-M, 2009-Ohio-1134, ¶ 55.

{¶46} Here, there was no ongoing emergency, and there was no interrogation. Rather, the video played for the jury contained an ongoing

conversation between Appellant and Barnes while they were lodged in the backseat of the trooper's cruiser. All the statements made were voluntary and not made in response to any sort of interrogation by law enforcement. Thus, we cannot conclude that the statements contained in the trooper cam video were testimonial as contemplated by *Crawford*, or that they offend the confrontation clause.

{¶47} Further, as argued by the State, there could be no expectation of privacy with respect to statements made in the back of a trooper's cruiser. As discussed by the Seventh District Court of Appeals:

"Various Ohio courts have held that there is no expectation of privacy in the back of a police cruiser, and have declined to exclude a variety of communications recorded in the back of a cruiser without the knowledge of one or all individuals involved. *State v. Ingram*, 9th Dist. No. 10CA0022-M, 2010-Ohio-3546, ¶ 15-17 (appellant had no reasonable expectation in his cell phone conversation with his mother which was recorded while he was seated in the back seat of the police cruiser prior to formal arrest) accord *State v. Blackwell*, 8th Dist. No. 87278, 2006-Ohio-4890, ¶ 33-35 (appellant had no reasonable expectation of privacy in his unwittingly tape-recorded

conversation in the back of a police cruiser with two co-defendants regardless of the fact that one co-defendant then turned state's evidence) accord *State v. Skidmore*, 12th Dist. No. CA99-12-137, 2000 WL 1086722 (August 7, 2000) (where appellant, who had been arrested but not read his rights, and did not know he was being recorded, made spontaneous statements while in the back of the police cruiser, the reviewing court found that there was no Miranda violation, appellant had no expectation of privacy in the cruiser, and trial counsel was not ineffective for not having sought to suppress the recording)." *State v. Dillard*, 7th Dist. Columbiana No. 09CO28, 2012-Ohio-2716, ¶ 37.

{¶48} We cannot conclude, based upon the facts before us and the foregoing case law, that Appellant's trial counsel's performance was deficient, or that the outcome of the trial would have been different had counsel objected to the complained of testimony. Because we cannot conclude that Appellant received ineffective assistance of counsel, his fifth assignment of error is overruled.

{¶49} Having found no merit to the assignments of error challenging his convictions, Appellant's convictions are affirmed. However, having

found a sentencing error related to the imposition of postrelease control, the

postrelease control portion of Appellant's sentence is vacated and this matter

is remanded to the trial court for proper imposition of postrelease control.

**JUDGMENT AFFIRMED IN PART, VACATED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

Harsha, J., concurring in part and dissenting in part:

**{¶50}** I dissent from that part of the court's opinion sustaining Dixon's fourth assignment of error and vacating the post-release-control portion of his sentence. I did not participate in *State v. Pippen*, 4th Dist. Scioto No. 14CA3595, 2014-Ohio-4454, and I dissented from *State v. Adkins*, 4th Dist. No. 14CA29, 2015-Ohio-2830, the two cases cited by the majority opinion in support of their disposition of the fourth assignment of error.

**{¶51}** As I previously observed in my dissent to *Adkins* at ¶ 28-29, I agree with the Eighth District's holding in *State v. Bybee*, 2015-Ohio-878, 28 N.E.3d 149 (8th Dist.). *See also State ex rel. Cornwall v. Sutula*, 8th Dist. Cuyahoga No. 103322, 2015-Ohio-4704, ¶ 6-9. Consequently, "[i]n reading R.C. 2929.141(A) it is clear there is no provision in that statute requiring the trial court in the original sentencing context to notify a defendant that a court sentencing the defendant for a subsequent crime can impose additional sanctions for the violation of post-conviction relief." *Adkins* at ¶ 29 (Harsha, J., dissenting). "Unlike R.C. 2929.19(B), which expressly requires notifications concerning the parole board's authority to impose sanctions for violations, R.C. 2929.141(A) addresses the trial court's authority to do so, and is silent about notification in the original sentencing

context." *Id.* As the Eighth District recently observed in rejecting our

holdings in *Pippen* and *Adkins*, "[b]oth the Seventh and Twelfth Districts

have rejected attempts to extend [the Supreme Court of Ohio's] mandatory

notifications for postrelease control under R.C. 2929.19(B) to 2929.141,

because R.C. 2929.141 contains no such notification requirement."

*Cornwall* at ¶ 10, citing *State v. Mullins*, 12th Dist. Butler No. CA2007-01-

028, 2008-Ohio-1995, and *State v. Susany*, 7th Dist. Mahoning No. 07 MA

7, 2008-Ohio-1543. Our appellate district appears to be the outlier on this

issue. I would join the Seventh, Eighth, and Twelfth Districts, overrule

those portions of our opinions in *Pippen* and *Adkins* that hold otherwise.

{¶52} I concur with the remainder of the opinion, except for the cite at

¶ 32 to our decision in *State v. Brewer, supra*.

# **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED IN PART, VACATED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.  Appellant and Appellee shall split costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

<u>IF</u> A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J.:    Concurs in Judgment and Opinion.
Harsha, J.:   Concurs in Part and Dissents in Part with Opinion.

For the Court,

BY:  _____
Matthew W. McFarland, Judge

**NOTICE TO COUNSEL: Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**